UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFRED O. FORSBERG,

Plaintiff,

- *against* -

ALWAYS CONSULTING, INC.; BRUCE
GRIFFITH, INDIVIDUALLY AND AS PRES./CEO
OF ALWAYS CONSULTING; MICHAEL
ROWLAND YORBA; D.W. LEWIS; DAMON FOX;          06 Civ. 13488 (CS) (LMS)
T.A. MARKHAM; JAMES TAYLOR; TRAVIS
JORDAN; KENDALL TINNIN; PAUL CARLISLE;
CHARLES ROUP; GERARD H. PLANTE; TOBY                REPORT AND
ENGLEMAN; ALEXANDRA STEWART; J.P.                 RECOMMENDATION
MORGAN CHASE BANK, 3200 BROADWAY
BLVD., GARLAND, TEXAS; JPM CHASE BANK,
TEXAS; LEXON INSURANCE COMPANY; FED
EX, A SUBSIDIARY OF J.P. MORGAN CHASE;
OSAGE INDIAN TRIBE; RUSSELL RANCH; BOY
SCOUTS OF AMERICA,

Defendants.

TO:    THE HONORABLE CATHY SEIBEL
       UNITED STATES DISTRICT JUDGE

        Defendants Lexon Insurance Company (herein, "Lexon") and J.P. Morgan Chase Bank

(herein, "Chase") have filed dispositive motions in the above-captioned *pro se* securities

litigation seeking dismissal of the Plaintiff's Second Amended Complaint.  See Docket #29,

Lexon's Notice of Motion; Docket #34, Chase's Notice of Motion.  *Pro se* Plaintiff Alfred

Forsberg (herein, "Plaintiff") commenced this action against numerous individuals and business

entities under federal and state securities laws and regulations seeking compensatory damages

based upon allegedly fraudulent and deceitful representations made to him in connection with an

investment he made in an oil and natural gas drilling venture in Texas and Oklahoma.  See

Docket #6, Plaintiff's Second Amended Complaint (herein, "Second Am. Comp.").  Additionally

pending before the Court is Plaintiff's renewed motion for default judgment against several

defendants whom he claims were served with the Second Amended Complaint and have not

answered or otherwise moved to dismiss under FED. R. CIV. P. 12(b).  See Docket #28, Plaintiff's

Revised Motion for Default Judgment Order (herein, "Default Judgment Motion").

    For the following reasons I conclude, and respectfully recommend that Your Honor

should conclude, that Lexon's motion for summary judgment should be granted, that Chase's

motion to dismiss should be granted, that Plaintiff's revised motion for default judgment should

be denied, and that Plaintiff's Second Amended Complaint as to all defendants except Lexon and

Chase should be dismissed without prejudice.  Because I respectfully recommend that Lexon and

Chase's dispositive motions should be granted, I respectfully recommend that the Plaintiff's

Second Amended Complaint as to these two defendants should be dismissed with prejudice.

## **BACKGROUND**

A.    Facts

    The following brief recitation of fact informs the instant motions pending before the

Court.  Although Defendant Lexon has styled its dispositive motion as a motion for summary

judgment, discovery has not gone forward, and the undersigned has not considered any of the

extraneous materials submitted by Lexon that would compel the Court to treat Lexon's motion as

a motion for summary judgment.  See, e.g., Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d

Cir. 2006).  The following facts are taken from the Plaintiff's Second Amended Complaint and

the documents submitted by Lexon and Chase that are incorporated by reference in the Plaintiff's

Second Amended Complaint.  The following facts are presumed true for the purposes of the instant motions.  See Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004).

Plaintiff asserts that in late 2005 he was contacted by Michael Yorba who recommended to the Plaintiff that he should "invest in an oil drilling project managed by Always [Consulting, Inc.] . . . ."  See Second Am. Comp. at ¶15.  Plaintiff maintains that the proposed oil drilling project managed by Always Consulting, Inc. was located in Oklahoma and Texas, and that on December 13, 2005, and again on December 16, 2005, Plaintiff and Bruce Griffith, President and CEO of Always Consulting, Inc., executed agreements that provided Plaintiff an ownership interest in the proposed drilling ventures.  See Second Am. Comp. at ¶16.  Plaintiff invested approximately $86,000 in two drilling projects known as Rattlesnake and Russell between December 2005 and June 2006.  See Second Am. Comp. at ¶¶17-19.  Plaintiff claims to have been assured by Mr. Griffith that he would receive a return on his investment in the amount of "$12,000.00 per month for about 12 years, starting in October of 2006, from his investment in Rattlesnake . . . and between $3,000 and $4,000 per month from his investment in Russell."  See Second Am. Comp. at ¶19.

Plaintiff alleges that on October 13, 2006, he contacted Mr. Griffith by letter demanding the return of $50,000 he invested in the Rattlesnake drilling program because of Mr. Griffith's failure to place the investment in escrow.  See Second Am. Comp. at ¶20.  Plaintiff additionally asserts that he learned of material facts that Mr. Griffith failed to disclose to him prior to investing in either the Rattlesnake or Russell drilling program.  Id.  Plaintiff does not explain if he ever received return correspondence from Mr. Griffith regarding these matters; Plaintiff explains, however, that on October 25, 2006, the Texas State Securities Board issued an

emergency cease and desist order enjoining Always Consulting, Inc. from selling additional "units of participation" in the Rattlesnake drilling project because of Mr. Griffith's and Always Consulting, Inc.'s failure to disclose certain facts to prospective investors and also because of their failure to register such "units of participation" with the Texas State Securities Commissioner.  <u>See</u> Plaintiff's Default Judgment Motion, Emergency Cease and Desist Order. The Texas State Securities Board also noted in its emergency order that Mr. Griffith failed to disclose his prior state and federal criminal convictions to prospective investors.  <u>Id.</u>

Plaintiff claims that he tried to contact Mr. Griffith and Always Consulting, Inc. again in late October 2006 in an effort to recoup his investment and was informed that "the State of Texas had seized the firm's computers and files."  <u>See</u> Second Am. Comp. at ¶24.

B.      <u>Procedural History and Plaintiff's Claims</u>

1.      Procedural History

Plaintiff commenced the instant action in this Court on November 27, 2006, against numerous individual and corporate defendants.  <u>See</u> Docket #1, Complaint.  On January 9, 2007, the Honorable Stephen C. Robinson, United States District Judge, to whom this case was originally assigned, issued an Order providing Plaintiff forty-five days to file an Amended Complaint.  <u>See</u> Docket #4, Order.  In his January 4, 2007, Order, Judge Robinson noted that the Plaintiff's original pleading only consisted of a list of alleged defendants and copies of bank statements and checks, and that Plaintiff's pleading did not otherwise satisfy the bare minimum needed to inform his adversaries of the nature of his claims.  <u>Id.</u>  Plaintiff filed an Amended Complaint on January 18, 2007.  <u>See</u> Docket #3.  Due to an error in docketing, however, it appears that Judge Robinson's January 4, 2007, Order was not entered on the docket of this case

until January 19, 2007, one day after Plaintiff filed an Amended Complaint.  <u>See</u> Docket #4,

Order (entered on docket of case on January 19, 2007).  Plaintiff, pursuant to Judge Robinson's

January 4, 2007, Order, then submitted a Second Amended Complaint – the pleading currently at

issue – which he signed on January 17, 2007, and which the undersigned accepted for filing on

March 14, 2007.  <u>See</u> Docket #6.[1]

Plaintiff filed a motion to enter default judgment against all named defendants on May

22, 2007.  <u>See</u> Docket #8.  Amended summonses reflecting the filing of the Second Amended

Complaint, however, were not issued by the Clerk of the Court until May 30, 2007.  On

September 21, 2007, the late Honorable Charles L. Brieant, United States District Judge, to

whom this case had been reassigned, denied Plaintiff's May 22, 2007, default judgment motion

based upon Plaintiff's failure to attach proof of service.  <u>See</u> Docket #13, Order.  Shortly

thereafter, on September 26, 2007, Judge Brieant dismissed the following defendants from this

case due to an absence of sufficient allegations against them in Plaintiff's Second Amended

Complaint: Damon Fox, James Taylor, Travis Jordan, Kendall Tinnin, Paul Carlisle, Gerard

Plante, Toby Engleman, Andrea Stewart, Federal Express, Osage Indian Tribe, Russell Ranch,

and the Boy Scouts of America.  <u>See</u> Docket #15, Order.  Thus, after Judge Brieant's September

26, 2007, Order, only Always Consulting, Inc., Bruce Griffith, Michael Yorba, D.W. Lewis,

T.A. Markham, Charles Roup, Lexon Insurance, and J.P. Morgan Chase Bank remained

defendants in this action.

The undersigned presided over two pretrial conferences at which counsel for Lexon

---

[1]  The undersigned construed Plaintiff's first Amended Complaint as being filed as a
matter of right under FED. R. CIV. P. 15(a) and Plaintiff's Second Amended Complaint as being
filed with leave of court pursuant to Judge Robinson's January 4, 2007, Order.

Insurance and J.P. Morgan Chase Bank attended but did not enter an appearance. Counsel for both Lexon and J.P. Morgan Chase Bank preserved their clients' rights to assert waivable Rule 12(b) defenses, such as lack of personal jurisdiction, lack of proper service of process, and improper venue. Id. Lexon and J.P. Morgan Chase Bank subsequently filed Answers to the Plaintiff's Second Amended Complaint in January and February of 2008. See Docket #19, Lexon's Answer; Docket #25, J.P. Morgan Chase Bank's Answer. On April 1, 2008, after the undersigned issued two lengthy Orders explaining to the Plaintiff the process he had to follow to file a proper default judgment motion, see Docket #17, Order, dated January 7, 2008; Docket #23, Order, dated February 15, 2008, Plaintiff's revised motion for default judgment was accepted for filing. See Docket #28.

 2. Plaintiff's Second Amended Complaint

 Plaintiff asserts that the defendants fraudulently obtained $84,248 from him in violation of federal and state securities laws. Plaintiff asserts causes of action against all defendants under Section 5 of the Securities Act of 1933, 15 U.S.C. §77e, Section 17 of the Securities Act of 1933, 15 U.S.C. §77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5. See Second Am. Comp. at ¶¶25-45.[2] Plaintiff maintains that the defendants, through interstate commerce, violated federal and state securities laws and regulations when they contacted him, solicited money from him in connection with the Rattlesnake and Russell drilling ventures, and failed to disclose to him certain pertinent and material facts. Plaintiff asserts that the defendants "directly and indirectly" committed acts of

---

 [2] A portion of Plaintiff's first cause of action includes several paragraphs preceding paragraph 25 that are not numbered.

fraud, deceit, and manipulation in connection with the sale and purchase of securities in violation of the aforementioned laws.  Id.  Plaintiff seeks compensatory damages and a permanent injunction barring the defendants from committing additional acts of fraud.  See Second Am. Comp. at ¶45.

       3.      Lexon's and Chase's Dispositive Motions

Lexon has filed a motion for summary judgment[3] seeking dismissal of Plaintiff's Second Amended Complaint.  See Docket #29.  Lexon has supplied the Plaintiff with the requisite notification and information required by the Second Circuit and this Court in circumstances where a defending party moves for summary judgment.  See Docket #30, Lexon's 56.2 Statement to Pro Se Litigant; Docket #31, Lexon's 56.1 Statement of Undisputed Material Fact. Lexon argues that it only had minimal involvement with the business transactions at the heart of the Plaintiff's Second Amended Complaint and that its *de minimis* involvement in such business dealings cannot be used as a basis to implicate it in the securities fraud scheme alleged by the Plaintiff.  See Docket #33, Lexon's Memorandum of Law (herein, "Lexon Mem.") at pp. 2-4 (arguing that it only issued surety bonds to Always Consulting, Inc.).

Chase has moved to dismiss the Plaintiff's Second Amended Complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim for relief and under FED. R. CIV. P. 9(e) for failure to plead a claim of fraud with sufficient particularity.  See Docket #35, Chase's Memorandum of Law (herein, "Chase Mem.") at pp. 3-8.  Akin to the arguments raised by Lexon, Chase raises similar arguments challenging the adequacy of Plaintiff's allegations against it as a secondary

---

[3] As noted supra at p. 2, I am considering this motion not as a motion for summary judgment but as a motion to dismiss.

actor in the alleged securities scheme.  Id. (noting that Chase only maintained the bank account that was allegedly used by Always Consulting, Inc.).  In the alternative, Chase argues that the case should be transferred to "a United States District Court in Texas pursuant to 28 U.S.C. §1404(a)" where venue would be more appropriate.  See Chase Mem. at pp. 8-10.

Plaintiff has submitted an Opposition to Lexon's and Chase's motions containing excerpts of several news articles referencing unrelated legal matters involving J.P. Morgan Chase Bank.  See Docket #36, Plaintiff's Opposition.  Plaintiff reasserts that Lexon and Chase furthered Always Consulting, Inc.'s scheme to defraud him of money by engaging in "corrupt banking and insurance practices," and claims that all of the "[d]efendants, directly or indirectly, singly or in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been directly or indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to offer such securities[,] (b) defendant have violated, and unless enjoined, will continue to violate section 5a and 5c of the Securities Act[,] 15 U.S.C. 77e; a; and 77e; c, as well as the Patriot Act and banking violations, and the Insurance Act in prior act as submitted to this court. (sic)"  See Pl's Opp. at p. 4.  Among other allegations, Plaintiff argues that Chase permitted Always Consulting, Inc. to funnel money among bank accounts maintained by Chase and that Lexon failed to inspect certain physical premises prior to issuing surety bonds to Always Consulting, Inc.  Id. at p. 5.

4.      Plaintiff's Default Judgment Motion

Plaintiff seeks the entry of default judgment against the eight defendants who remain parties to this action.  See Docket #28.  Plaintiff avers that a process server served the revised

default judgment motion on each of the defendants "through the U.S. Postal Service" and that the accompanying affidavits evincing such service of process are attached to his motion at Exhibit B. <u>See</u> Default Judgment Motion at p. 2.[4]  In support of his application for default judgment, Plaintiff submits a letter from Rickey Odrisco in which Mr. Odrisco swears under penalty of perjury that he personally served the Second Amended Complaint on Bruce Griffith both in Richardson, Texas, which is where Always Consulting Inc.'s office is located, and in Dallas, Texas, which is where Plaintiff alleges Bruce Griffith maintains his personal residence. <u>See</u> Default Judgment Motion, Odrisco Correspondence.  Mr. Odrisco states that Mr. Griffith accepted service of the Second Amended Complaint on behalf of Always Consulting, Inc., himself, and numerous other defendants, including certain defendants who are no longer parties in this case. <u>Id.</u> Mr. Odrisco also claims to have served the Second Amended Complaint both on J.P. Morgan Chase Bank by serving its counsel and an individual at J.P. Morgan Chase Bank's headquarters in New York City, and on Lexon Insurance by serving an individual at Lexon Insurance's headquarters in Louisville, Kentucky. <u>Id.</u> Mr. Odrisco additionally maintains that he "hired three independent process servers . . .," but fails to specify why he hired such process servers or what they were hired to serve.  Mr. Odrisco's letter is dated March 10, 2008.  Plaintiff also attaches copies of affidavits of service submitted by a process server that reflect that the process server served documents entitled "new motion for default and cease and desist order and reference to second amended summons and complaint" on Bruce Griffith on February 5, 2008.

---

[4] Plaintiff's Default Judgment Motion, however, does not include any marked exhibits, even though my prior Orders on this issue (Docket #17 and #23) expressly directed Plaintiff that any Exhibits offered in support of his motion must be identified by a marking such as a number or letter.

<u>See</u> Default Judgment Motion, Affidavits of Process Server.[5]  Plaintiff signed and dated his

default judgment motion on March 8, 2008.  <u>See</u> Default Judgment Motion at p. 3.

## **DISCUSSION**

A.    <u>Standard of Review</u>

Lexon and Chase seek dismissal of the Plaintiff's Second Amended Complaint under

different procedural mechanisms.  Lexon seeks summary judgment on Plaintiff's Second

Amended Complaint on the ground that there is no genuine issue of material fact, <u>see</u> FED. R.

CIV. P. 56; Chase seeks dismissal of Plaintiff's Second Amended Complaint on the ground that

the Plaintiff's pleading fails to state a claim for relief and fails to comport with the heightened

pleading requirements for claims of fraud, <u>see</u> FED. R. CIV. P. 12(b)(6), FED. R. CIV. P. 9(e).  In

cases such as this, where a party seeks dismissal of a complaint prior to discovery, a motion to

dismiss challenging the sufficiency of the pleading is usually the more appropriate vehicle.  <u>See</u>,

<u>e.g.</u>, <u>Hanlin v. Mitchelson</u>, 794 F.2d 834, 838-39 (2d Cir. 1986).  Although Lexon has presented

material to the Court in support of its motion that is extrinsic to the Plaintiff's Second Amended

Complaint, I respectfully recommend that the Court need not rely on such material in concluding

that the Plaintiff's Second Amended Complaint fails to state any cognizable claim against

Lexon.  In light of this recommendation, the Court can construe Lexon's motion as a motion to

dismiss for failure to state a claim for relief and can apply the Rule 12(b)(6) motion to dismiss

standard of review to both of the currently pending dispositive motions.  <u>See</u> <u>Cleveland</u>, 448 F.3d

_____

[5]  Plaintiff also includes affidavits of service previously submitted to the Court in connection with Plaintiff's attempts to serve the original and amended summons and complaint. The propriety and sufficiency of these affidavits have been addressed by the undersigned in the previous Orders of January 7, 2008, and February 15, 2008.

at 521 (instructing that conversion of a motion to dismiss into a motion for summary judgment only is required when extrinsic material is relied upon by a court in rendering its decision).

When considering a defendant's Rule 12(b) motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Raila, 355 F.3d at 119. Under this standard, "[d]ismissal is inappropriate unless it appears beyond a doubt that the plaintiff can prove no set of facts which entitle him or her to relief." Id. A Rule 12(b)(6) motion to dismiss thus challenges the legal sufficiency of the Plaintiff's averments and only should be granted when "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[6] Put another way, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law," Neitzke v. Williams, 490 U.S. 319, 326 (1989), and granting a Rule 12(b)(6) motion to dismiss is considered a ruling on the merits of the Plaintiffs' claims, see Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

When reviewing a 12(b)(6) motion to dismiss, it is appropriate for the court only to determine the legal sufficiency of the pleading and not to weigh the evidence that may be presented at trial. See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). As such, the

---

[6] "Considerable uncertainty concerning the standard for assessing the adequacy of pleadings has recently been created by the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)." Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007), *cert. granted sub. nom.,* Ashcroft v. Iqbal, 128 S. Ct. 2931 (2008) (explaining the heightened standard of review for motions to dismiss suggested in Twombly). I respectfully recommend that the Plaintiff's Second Amended Complaint against Lexon and Chase is insufficient under both the standard relied upon by courts prior to Twombly and the heightened flexibile plausibility standard utilized by courts after Twombly. See Iqbal, 490 F.3d 157-58.

Court may only consider the information contained in the four corners of a complaint, including "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," or any other document that the complaint "relies heavily upon . . . render[ing] the document integral to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

B.      Plaintiff's Claims Against Lexon and Chase

    1.      Viable Causes of Action

    Plaintiff asserts claims against Lexon and Chase under sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.  Of the statutes relied upon by the Plaintiff, only section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 have been interpreted as providing a civil complainant a private right of action.  See Stoneridge Inv. Partners v. Scientific-Atlanta, Inc., 128 S. Ct. 761, 768 (2008) (explaining that "the Court has found a right of action implied in the words of the statute [section 10(b) of the Securities Exchange Act of 1934] and its implementing regulation [Rule 10b-5]."); ATSI Communs. v. Shaar Fund, Ltd., 493 F.3d 87, 99, 101, 105 (2d Cir. 2007) (discussing claims of market manipulation and misrepresentation under Rule 10b-5).  Sections 5 and 17 of the Securities Act of 1933 do not provide a plaintiff a private right of action.  See Finkel v. Stratton Corp., 962 F.2d 169, 175 (2d Cir. 1992) (holding that there is no private right of action under section 17(a) of the Securities Act); Stryker v. Stelmak, 06 Civ. 1322 (DC), 2006 WL 3292457, at *4 (S.D.N.Y. Nov. 14, 2006) (dismissing private civil litigant's assertion of a claim for relief under section 17(a) of the Securities Act of 1933); Branch v. Tower Air, 94 Civ. 6625 (JFK), 1995 WL 649935, at *7 (S.D.N.Y. Nov. 3, 1995) ("there is no private right of action

directly under §5 of the Securities Act of 1933 . . .") (citation omitted). Courts in this district, however, have construed claims asserted under section 5 of the Securities Act of 1933 as claims arising under section 12 of the Securities Act of 1933, which does provide for a private right of action. See Ato Ram, II, Ltd. v. SMC Multimedia Corp., 03 Civ. 5569 (HB), 2004 WL 744792, at *5 n.5 (S.D.N.Y. April 7, 2004) (construing section 5 claim as arising under private right of action provision contained in section 12). The undersigned will therefore assess whether Plaintiff's Second Amended Complaint states sufficient claims for relief against Lexon and Chase under section 12 of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.

      2.      Section 12 of the Securities Act of 1933

Section 12 of the Securities Act of 1933 imposes civil liability on any person "who offers or sells a security in violation of §5 of the [Securities] Act, 15 U.S.C. §77e." Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 123 n.2 (2d Cir. 1998). Section 5 of the Securities Act of 1933 requires that all securities sold in interstate commerce be registered. Id. at 124 n.4. "To establish a claim under Section 12(a)(2) of the 1933 Act [the Securities Act], a plaintiff must prove that (1) defendants sold or offered a security (2) by means of a prospectus (3) that included an untrue statement of material fact or omitted a material fact necessary to make such statements not misleading." Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) (citing 15 U.S.C. §77l(a)(2)). In addition to these basic elements, a plaintiff must also allege that the defendant "had a legal obligation to disclose the allegedly omitted information" to the plaintiff. Id.

Both Lexon and Chase argue that they had no direct involvement with Always

Consulting, Inc. or with the oil and gas venture in which Plaintiff invested and note that they did not sell or offer a security to the Plaintiff.  <u>See</u> Lexon Mem. at p.3 ("Lexon's relationship with Defendant Always Consulting was limited to Lexon's issuance of ten (10) surety bonds.  The Bonds issued by Lexon have absolutely nothing to do with the sale of securities."); Chase Mem. at p. 5 (" . . . a claim that funds were deposited into a Chase bank account cannot support a fraud claim against Chase.").  Absent any allegation that Lexon or Chase improperly sold a security or offered a security for sale that contained a material misrepresentation, or that Lexon or Chase otherwise engaged in the solicitation of a security, Plaintiff cannot draw Lexon and Chase into his securities fraud claim against Always Consulting, Inc. under section 12 of the Securities Act of 1933.  <u>See</u>, <u>e.g.</u>, <u>Capri v. Murphy</u>, 856 F.2d 473, 478 (2d Cir. 1988) (discussing <u>Pinter v. Dahl</u>, 486 U.S. 622 (1988), which addressed the scope of liability a potential defendant could incur under section 12(a)(1) of the Securities Act as a "seller" of a security).  Plaintiff's allegations against Lexon and Chase consist of claims that both entities facilitated Always Consulting, Inc.'s scheme "through corrupt banking and insurance practices . . . ."  <u>See</u>, <u>e.g.</u>, Second Am. Comp. at ¶33.  Such allegations, even if true, do not constitute claims arising under section 12 of the Securities Act of 1933 because they do not allege that Lexon or Chase were involved in the sale of a security.  I therefore conclude, and respectfully recommend that Your Honor conclude, that Plaintiff's allegations against Lexon and Chase fail to state a colorable claim under section 12 of the Securities Act of 1933 and that these claims against Lexon and Chase should be dismissed.

3.      Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

Unlike section 12 of the Securities Act of 1933, section 10(b) of the Securities Exchange

Act of 1934 and Rule 10b-5 cover a wide range of actionable conduct.  See, e.g., Stoneridge, 128

S. Ct. at 768; ATSI Comms., 493 F.3d at 105.  Both section 10(b) and Rule 10b-5 prohibit a

defendant from engaging in "any manipulative or deceptive device or contrivance" in connection

with the sale or purchase of a security.  See 15 U.S.C. §78j; see also 17 C.F.R. §240-10b-5.  Rule

10b-5, which implements the purpose of section 10(b) of the Securities Exchange Act of 1934,

provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange,
>> (a) to employ any device, scheme, or artifice to defraud,
>> (b) to make any untrue statement of material fact or to omit to state a
>> material fact necessary in order to make the statements made, in the light
>> of the circumstances under which they were made, not misleading, or
>> (c) to engage in any act, practice, or course of business which operates or
>> would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.  "In a typical §10(b) private action a plaintiff must prove (1) a material

misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation."  Stoneridge, 128 S. Ct.

at 768; see also ATSI Communs., 493 F.3d at 105.

Although section 10(b) and Rule 10b-5 claims are broader than claims brought under

section 12 of the Securities Act of 1933, the Supreme Court has consistently cautioned against

overextending the reach of the private right of action contained within section 10(b) and Rule

10b-5.  Specifically, the Supreme Court has held that section 10(b) and Rule 10b-5 liability does

not extend to aiders and abettors of manipulative practices, acts, or conduct.  See Central Bank

of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177, 191 (1994).  Under

Central Bank a secondary actor will only be held liable for material misrepresentations or

omissions if the plaintiff can establish that the secondary actor would be liable as a primary

actor. Id. The Supreme Court reaffirmed this limitation on aider and abettor liability in

Stoneridge v. Scientific-Atlanta, in which the Court held that a plaintiff must demonstrate that

"[t]he conduct of a secondary actor . . . satisf[ies] each of the elements or preconditions for

[primary] liability" in order for a plaintiff to assert a section 10(b) and Rule 10b-5 claim against

a secondary actor. See 128 S. Ct. at 769. Under Stoneridge and Central Bank, therefore, a

plaintiff can only maintain a claim for relief under section 10(b) and Rule 10b-5 against a

secondary actor when the plaintiff can establish that the secondary actor would himself or herself

be liable as a primary actor under these provisions. Stoneridge, 128 S. Ct. at 769; Central Bank,

511 U.S. at 177, 191; see also Katz v. Image Innovations Holdings, Inc., 542 F. Supp. 2d 269,

272-73 (S.D.N.Y. 2008) (noting that the Supreme Court eliminated claims based upon "scheme

liability" under section 10(b) and Rule 10b-5 in Stoneridge). The Second Circuit and Courts

within this District have reasoned that Central Bank also circumscribes a plaintiff's ability to

assert a conspiracy claim under section 10(b) and Rule 10b-5. See Dinsmore v. Squadron,

Ellenoff, Plesent, Sheinfeld, & Sorkin, 135 F.3d 837, 841 (2d Cir. 1998) ("the Supreme Court's

reasoning in Central Bank applies not only to aiding and abetting claims, but to conspiracy

claims as well."); SEC v. Collins and Aikman, 524 F. Supp. 2d 477, 486 (S.D.N.Y. 2007); In re

Motel Six Sec. Lit., 161 F. Supp. 2d 227, 234 (S.D.N.Y. 2001).

   The Supreme Court, however, has not immunized all secondary actors from liability

under these federal securities anti-fraud provisions. "Any person or entity, including a lawyer,

accountant, or bank, who employs a manipulative device or makes a material misstatement (or

omission) on which a purchaser or seller of securities relies may be liable as a primary violator under Rule 10b-5, assuming *all* of the requirements for primary liability are met." <u>Central Bank</u>, 511 U.S. at 191 (emphasis added). When seeking to impose liability on a secondary actor under this narrow provision, a plaintiff still must establish that the secondary actor was under an affirmative obligation to disclose material information to the plaintiff. <u>See</u> <u>Shapiro v. Cantor</u>, 123 F.3d 717, 721 (2d Cir. 1997) ("We believe the district court correctly rejected this claim on the basis that [the defendant] cannot be liable for failure to disclose material information under §10(b) unless it was under a duty to do so.") (citing <u>Chiarella v. United States</u>, 445 U.S. 222, 228 (1980)). The Supreme Court reasoned in <u>Chiarella</u> that section 10(b) and Rule 10b-5 claims based upon an alleged failure to disclose material information to a prospective investor can only exist against a defendant that was charged with the fiduciary obligation to disclose material information. 445 U.S. at 228; <u>see also</u> <u>Overton v. Todman and Co., CPAS, P.C.</u>, 478 F.3d 479, 486-87 (2d Cir. 2007) (holding that an accountant may be held liable as a primary actor under Rule 10b-5 when he or she makes his or her own affirmative misrepresentation or omission in connection with the sale or purchase of a security).

A review of the allegations in the Plaintiff's Second Amended Complaint leads me to conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's averments fail to state a claim for relief against either Lexon or Chase under section 10(b) and Rule 10b-5. Plaintiff's allegations against these entities fail to identify how either of them committed a material misrepresentation to the Plaintiff in connection with the sale of a security. <u>See</u> <u>Stoneridge</u>, 128 S. Ct. at 768. Plaintiff fails to allege that either Lexon or Chase had any direct or indirect involvement with Always Consulting, Inc.'s sale of securities to the Plaintiff;

Plaintiff claims that Lexon "wrote policies without any verification or checking on their part," see Second Am. Comp. at ¶9, and that he was "directed . . . to send money to J.P. Morgan Chase Bank in Texas, with whom [Mr. Griffith and Always Consulting, Inc.] were affiliated," see Second Am. Comp. at ¶11.[7]  Plaintiff has not alleged – nor could he – that either Lexon or Chase was under an affirmative obligation to disclose material information to him about Always Consulting, Inc.'s business transactions, including its alleged sale of securities to prospective purchasers.  See Chiarella, 445 U.S. at 228 ("[T]he duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.' ").  Here there is no assertion that Plaintiff and Lexon or that Plaintiff and Chase were independently engaged in a fiduciary relationship giving rise to an obligation on the part of either defendant to disclose material information to the Plaintiff about Always Consulting, Inc. or its business transactions.

Assuming *arguendo* that Lexon and Chase had some involvement with Always Consulting, Inc.'s securities transactions with the Plaintiff, the degree of involvement Lexon and Chase allegedly had with Always Consulting, Inc. falls far below the level of secondary actor liability held by the Supreme Court in Stoneridge and Central Bank to be insufficient.  Under Stoneridge and Central Bank the Plaintiff must establish each of the elements of a section 10(b) and Rule 10b-5 claim against each defendant as if that defendant was a primary actor.  In this case, however, Plaintiff has only alleged that Always Consulting, Inc.'s allegedly fraudulent

---

[7]  Although Plaintiff maintains throughout his Second Amended Complaint that Chase was involved in a joint venture with Always Consulting, Inc., see, e.g., Second Am. Comp. at ¶10, as explained supra at p. 16, the Supreme Court and the Second Circuit have foreclosed imposing liability on defendants by virtue of their association with other actors who themselves may be liable under the federal securities laws.

practices were made possible "through corrupt banking and insurance practices by JP Morgan Chase Bank and Lexon Insurance Company." <u>See</u>, <u>e.g.</u>, Second Am. Comp. at ¶33. Such generic allegations of wrongdoing are similar to the allegations that the Supreme Court disapproved of in <u>Stoneridge</u>. <u>See</u> 128 S. Ct. at 770 (describing the theory of liability rejected by the Court). Absent an allegation that Lexon or Chase committed acts constituting primary violations of section 10(b) and Rule 10b-5, the Plaintiff cannot maintain a claim against either of these entities under these federal anti-fraud securities laws. <u>See</u> <u>id.</u> at 773-74 ("the implied right of action in §10(b) continues to cover secondary actors who commit primary violations.") (citing <u>Central Bank</u>, 511 U.S. at 191).

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's allegations against Lexon and Chase fail as a matter of law because they do not specify how each entity was engaged in a fiduciary relationship with the Plaintiff and also because they are predicated upon a theory of liability that has been dispelled by the Supreme Court and the Second Circuit. Although secondary actors may incur liability under section 10(b) and Rule 10b-5, such claims of liability will only be sustained when the secondary actor is in a specific fiduciary relationship with a complainant and when the secondary actor makes affirmative statements or omissions to an investor that mislead an investor and cause the investor to suffer economic loss. <u>See</u>, <u>e.g.</u>, <u>Overton</u>, 478 F.3d at 486-87. In this case, however, neither Lexon nor Chase, as an insurance company and bank, respectively, had a duty to disclose any information to the Plaintiff that they might have had about Always Consulting, Inc. I therefore conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's claims against Lexon and Chase should be dismissed with prejudice for failure to state a claim

for relief under FED. R. CIV. P. 12(b)(6).

C.       Plaintiff's Default Judgment Motion

        1.       Scope of Default Judgment Motion

        Plaintiff has filed a motion for default judgment against "the remaining eight

Defendants" based upon their "fail[ure] to answer[,] appear[,] or otherwise defend . . . ."  See

Default Judgment Motion at p. 1.  Insofar as Plaintiff seeks default against Lexon and Chase,

however, both of these defendants have filed Answers to the Plaintiff's Second Amended

Complaint and have moved for dismissal of the Plaintiff's pleading.  During the last appearance

before the undersigned the Court informed the parties that Plaintiff's default judgment motion

against Lexon and Chase was mooted because they had filed Answers to the Plaintiff's Second

Amended Complaint and that the propriety of the Plaintiff's motion for default judgment would

only be assessed against the remaining non-answering defendants: Always Consulting, Inc.,

Bruce Griffith, Michael Yorba, D.W. Lewis, T.A. Markham, and Charles Roup.

        In support of his motion for default judgment, however, Plaintiff has only submitted

affidavits of service of the revised default judgment motion on defendants Always Consulting,

Inc. and Bruce Griffith; Plaintiff has not submitted any evidence of service of the revised default

judgment motion on Michael Yorba, D.W. Lewis, T.A. Markham, or Charles Roup.  See Default

Judgment Motion.  As explained to the Plaintiff during the last appearance, in the absence of any

evidence that he served the revised default judgment motion on these four individual defendants,

the Court cannot enter default judgment against these defendants.  As such, the only defendants

against whom default may be sought under the instant default judgment motion are Always

Consulting, Inc. and Bruce Griffith.

2.      Default Judgment Standard

Federal Rule of Civil Procedure 55 enumerates the process for the entry of a default judgment against a defaulting party.  See FED. R. CIV. P. 55.  Rule 55 envisions a two step process: first, the party seeking the entry of a default judgment shall obtain a default against the defaulting party, see FED. R. CIV. P. 55(a), and second, the party seeking entry of a default judgment shall move for the entry of the default judgment under FED. R. CIV. P. 55(b).  See New York v. Green, 420 F.3d 99, 102 (2d Cir. 2005).  Either the Clerk of the Court or the Court may enter a default judgment under Rule 55(b).  Id.  The Clerk of the Court, however, may only enter judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . .."  See FED. R. CIV. P. 55(b)(1).  In order for the Clerk of the Court to enter a default judgment, the Plaintiff must provide "an affidavit showing the amount due" and the default must not be sought against "a minor or an incompetent person."  Id.  "In all other cases, the party must apply for default judgment [to the Court.]"  See FED. R. CIV. P. 55(b)(2).  A defaulting party can seek relief from the entry of a default judgment by moving to have the default judgment vacated under FED. R. CIV. P. 55(c) and FED. R. CIV. P. 60(b).  See Green, 420 F.3d at 108.  As previously explained by this Court, "[j]udgment by default is an 'extreme remedy,' " see Docket #25, Order at p. 11 (quoting U.S. v. DiPaolo, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)), and a resolution of a dispute on its merits is preferred to the entry of a default judgment, id. at 10-11 (quoting Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001)).


3.      Propriety of Plaintiff's Revised Default Judgment Motion Against Defendants

Always Consulting, Inc. and Bruce Griffith

In this case the Clerk of the Court has not yet entered a default against Always Consulting, Inc. or Bruce Griffith under FED. R. CIV. P. 55(a). The absence of the entry of a default against Always Consulting, Inc. and Bruce Griffith under FED. R. CIV. P. 55(a), however, is not fatal to Plaintiff's motion for default judgment against these defendants due to the ministerial nature of obtaining such a default under Rule 55(a).

Plaintiff's submissions in support of the entry of default judgment against Always Consulting, Inc. and Bruce Griffith under Rule 55(b)(2) fail to support his application. The information contained in the affidavits of service of process on Bruce Griffth and Always Consulting, Inc. do not establish that the Plaintiff has successfully evinced sufficient service of process of the Second Amended Complaint and revised default judgment motion on these defendants in the proper sequence. Plaintiff submits the signed letter of Rickey Odrisco in support of the service of process of the Second Amended Complaint on Bruce Griffith, individually, and on behalf of Always Consulting, Inc. Mr. Odrisco's letter, however, is dated March 8, 2008, and does not state or otherwise identify the date when Mr. Odrisco served the Second Amended Complaint on Mr. Griffith. The affidavits of the process server who served the revised default judgment motion, however, specify that the process server served the revised default judgment motion on Mr. Griffith on February 5, 2008, a full month *before* Mr. Odrisco authored his correspondence affirming that he had served the Second Amended Complaint on the defendants. Thus, at best, Mr. Odrisco's letter establishing service of the Second Amended Complaint, which is required in order for default to follow (the letter is a part of Docket entry #28), could not have been included in the documents served on Mr. Griffith on February 5, 2008,

as it did not exist until March 8, 2008. The Court is unable to discern whether the revised

default judgment motion was served before or after service of the Second Amended Complaint.

In any event, the requisite "proof" of service – Mr. Odrisco's March 8, 2008, letter – could not

have been included in what was served on February 5, 2008.[8] Moreover, it is not clear to the

undersigned what documents were actually served on Mr. Griffith by the process server on

February 5, 2008.[9]

     Sufficiency of process and the adequacy of service of process are affirmative defenses

that must be raised by a defendant in a Rule 12(b) motion to dismiss. See FED. R. CIV. P.

12(b)(4) (insufficiency of process); 12(b)(5) (insufficiency of service of process); 12(h)(1)

(waiver of certain affirmative defenses); see also Santos v. State Farm Fire & Casualty Co., 902

F.2d 1092, 1095 (2d Cir. 1990). Such defenses usually are not raised by the Court on its own

initiative and will be deemed waived by the defendant if not included as an affirmative defense

or raised in a pre-answer motion. See Santos, 902 F.2d at 1095. A court may enter a default

judgment without conducting a review of the sufficiency of personal jurisdiction over the

defendant or the adequacy of the process or the service of process on a defendant. Such

---

[8] The undersigned notes in addition that Plaintiff's revised default judgment motion was signed and dated by the Plaintiff on March 8, 2008, and that the process server's affidavits of service are dated prior to the Court's last Order, which again explained the process the Plaintiff must follow in order to move for a proper default judgment. See Default Judgment Motion, Affidavit of Service (affirming that service was effected in person on February 5, 2008); see also Docket #23, Order, dated February 15, 2008. Thus, whatever was served on February 5, 2008, was not prepared with the guidance offered in my Order of February 15, 2008.

[9] Although the process server affirms that he personally served Mr. Griffith with the revised default judgment motion on February 5, 2008, Plaintiff claims in his March 8, 2008, submission that "[a] process server has on this day served the Revised Default Judgment Motion upon each of the eight Defendants by sending it through the U.S. Postal Service. Affidavits of such service are attached as Exhibit B." See Default Judgment Motion at p. 2 (emphasis added).

challenges to the sufficiency of the jurisdiction of the entering court over a defendant can be reviewed collaterally by the court in which the default judgment is sought to be enforced. <u>See</u>, <u>e.g.</u>, <u>Baldwin v. Iowa State Traveling Men's Ass'n</u>, 283 U.S. 522, 525 (1931); <u>Norex Petroleum, Ltd. v. Access Indus.</u>, 416 F.3d 146, 160-61 (2d Cir. 2005) ("a defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.") (quoting <u>Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 706 (1982)).

Although these are the standards and procedures that are typically followed, the instant case highlights the improvidence of entering default judgment against Bruce Griffith and Always Consulting, Inc., and leaving potential challenges to the sufficiency of service of process for subsequent consideration by a different court in another jurisdiction that is not familiar with the factual background and complex procedural history of this case. The undersigned, upon reviewing the basic information contained within the affidavits of service of the Second Amended Complaint and the revised default judgment motion, is not satisfied that service has been properly effected, and cannot tell what documents have been served on the defendants. In light of the drastic nature of a default, some courts in similar circumstances have found it appropriate to conduct a cursory sua sponte review of the adequacy of the service of process prior to entering a default judgment. <u>See</u> <u>In re Blutrich, Herman and Miller</u>, 227 B.R. 53, 58-59 (Bankr. S.D.N.Y. 1998) (discussing exceptions to general rule against raising waivable defenses in "extraordinary circumstances"). Courts that have been presented with a default judgment motion under circumstances similar to the instant case have reasoned that a court analyzing the otherwise waivable defenses of personal jurisdiction and service of process on its own initiative

"is not raising the defense[s] on behalf of the party, but is 'exercising its responsibility to determine that it has the power to enter the default judgment.' " Id. at 59 (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the Court should review the adequacy of the affidavits of service submitted by the Plaintiff in connection with his revised motion for default judgment, and based upon such a review, should conclude that the entry of default judgment against Mr. Griffith and Always Consulting, Inc. is not appropriate in this case. The timing and content of the service of the Second Amended Complaint and the revised default judgment motion has not been established by the Plaintiff. Despite the undersigned's repeated past efforts to explain this process to the Plaintiff, the Plaintiff has failed to evince adequately the chronology of the service of process of the documents needed to enter a default judgment in this case. Additionally, from the dates provided by the Plaintiff in his motion, the Court can only conclude that the revised default judgment motion, Docket #28, was not served on Mr. Griffith or Always Consulting, Inc. in the form in which it was presented to the Court for filing because of the inclusion of a document that is dated after the alleged service of process of the motion itself. Additionally, it remains unclear what documents were actually served on Mr. Griffith on February 5, 2008, and whether Mr. Griffith or any other representative of Always Consulting, Inc., is actually aware of this pending default judgment motion.[10] Absent the Plaintiff supplying sufficient evidence establishing proper

---

[10] On May 7, 2008, counsel for Michael Yorba, Mr. John Stewart, faxed a letter to Judge Brieant informing him that "Mr. Yorba recently learned that he was named as a Defendant in the above case," and that "Mr. Yorba has not been served with the original complaint, any of the

(continued from previous page . . .)

service of process of the Second Amended Complaint and the revised default judgment motion on Always Consulting, Inc. and Bruce Griffith in the proper order, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's revised default judgment motion, Docket #28, should be denied.

In light of the instant recommendation, I further conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's Second Amended Complaint should be dismissed without prejudice to refile. See FED. R. CIV. P. 4(m); Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007). He has failed to establish service of the Second Amended Complaint as required by Rule 4(m) and dismissal is the appropriate remedy, especially where he has been repeatedly notified of the need to establish proper service. Dismissing Plaintiff's Second Amended Complaint against Always Consulting, Inc., Bruce Griffith, Michael Yorba, D.W. Lewis, T.A. Markham and Charles Roup without prejudice will allow the Plaintiff the opportunity, if he chooses, to refile his claims against these defendants in a new lawsuit.[11]  Upon such a filing, the Plaintiff would then be under an obligation to effect service of process of the

amended complaints, or any of the motions filed in this matter." Mr. Stewart emphasized that he was not entering an appearance in the matter on behalf of Mr. Yorba. The Court has received no further communication from Mr. Stewart.

[11] Zapata suggests that a district court should consider the potential impact of dismissing a complaint under Rule 4, including the possibility that dismissing such a case may impact the Plaintiff's ability to refile his or her action on timeliness grounds. See 502 F.3d at 197. Although the undersigned expresses no opinion on whether Plaintiff's claims would be timely if asserted in a new pleading, the undersigned notes that the Court has undertaken significant effort to explain the procedure the Plaintiff must follow to effectuate service of process of his Second Amended Complaint and revised default judgment motion properly. This case has been pending since November of 2006 and during this time the Plaintiff has not been able to effect service of process of any of his documents to the satisfaction of this Court. The Court has no reason to believe that granting the Plaintiff a third opportunity to effect service of the summons and Second Amended Complaint will lead to a different result.

summons and the new pleading on all defendants within 120 days.  See FED. R. CIV. P. 4(m).

After Plaintiff successfully effectuates service of process in a new lawsuit in accord with FED. R.

CIV. P. 4(m), the defendants would then be under an obligation to answer or otherwise move

within twenty days.  See FED. R. CIV. P. 12(a)(1)(A).  Should any defendant fail to do so,

Plaintiff would then be entitled to file for default and to seek the entry of a default judgment in

accord with the principles discussed.

## CONCLUSION

For the reasons stated above I conclude, and respectfully recommend that Your Honor

should conclude, that Lexon's and Chase's dispositive motions, Docket #29 and #34, should be

granted and that the Plaintiff's Second Amended Complaint as to these defendants should be

dismissed with prejudice.  I further conclude, and respectfully recommend that Your Honor

conclude, that the Plaintiff's revised default judgment motion, Docket #28, should be denied and

that the Plaintiff's Second Amended Complaint should be dismissed without prejudice as to

defendants Always Consulting, Inc., Bruce Griffith, Michael Yorba, D.W. Lewis, T.A.

Markham, and Charles Roup.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall

have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total

of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Cathy Seibel at

the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the

chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: September___, 2008
       White Plains, New York

                                      Respectfully Submitted,


                                    _____
                                    Lisa Margaret Smith
                                    United States Magistrate Judge
                                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel, U.S.D.J.

Plaintiff *pro se* and Counsel of Record for Defendants Lexon Insurance and J.P. Morgan Chase Bank